

**SIGNED this 10th day of April, 2009.**

_____
LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE
_____

# United States Bankruptcy Court
### Western District of Texas
### San Antonio Division

| | |
|---|---|
| In re Tolbert Wilkinson, M.D. & Suzanne T. Wilkinson<br>*Debtors* | Bankruptcy Case No.<br>07-50189-C<br>Chapter 7 |

## Memorandum Decision on Objection to Personal Property Exemptions

The debtors claimed an exemption in firearms. The Trustee objected. This decision explains why the court sustains the objection to exemption.

### Factual and Procedural Background

On August 26, 2008 [Docket No. 146], the debtors filed amended[1] schedules in which they claimed state law exemptions in the following items:

- MP .45 rifle, .380 pistol, two .22 caliber pistols, .30-.30 rifle and a .45 caliber pistol (collectively, the "**Firearms**") under Texas Property Code §§ 42.001(a), 42.002(a)(8) (sporting goods and equipment).

---

[1] The debtors first filed this case under chapter 13. It was later converted to chapter 7.

1

- 17 antique handguns and 1 dummy gun (the "**Collection**") under Texas Property Code §§ 42.001(a), 42.002(a)(1) (home furnishings, including heirlooms).

On November 5, 2008, the chapter 7 trustee (the "**Trustee**") filed an objection to the debtors' claim of exemption[2] to the Firearms and the Collection [Docket No. 184]. The Trustee argues that, pursuant to Texas Property Code § 42.002(7), "[t]he Debtors must select only two firearms eligible for exemption. The remaining four (4) firearms identified under the Firearms category and the eighteen (18) firearms identified as the Collection, must be turned over to the Trustee." *Obj.*, at 2-3 (citing *In re Schwarzbach*, 1989 WL 360742 (Bankr. W.D. Tex. 1989) (Clark, J.). After the Objection was filed, on November 14, 2008, the debtors amended Schedule C [Docket No. 196], so that they now claim as exempt the following firearms:[3]

- a Sharps cavalry carbine circa 1863, pursuant to Texas Property Code §§ 42.001(a), 42.002(a)(1) and (7);
- a Sharps new model rifle, .52 caliber C. 1860, pursuant to Texas Property Code §§ 42.001(a), 42.002(a)(1), (7);
- a Spencer repeating rifle, .52 caliber C. 1860, pursuant to Texas Property Code §§ 42.001(a), 42.002(a)(1);
- an English Blunderbuss saddle gun, silver, c. 1845, pursuant to Texas Property Code §§ 42.001(a), 42.002(a)(1);
- a Burnside cavalry carbine, c. 1863, pursuant to Texas Property Code §§ 42.001(a), 42.002(a)(1);
- an English blunderbuss, flintlock, with bayonet, pursuant to Texas Property Code §§ 42.001(a), 42.002(a)(1); and
- an English blunderbuss, flintlock, c. 1750, pursuant to Texas Property Code §§ 42.001(a), 42.002(a)(1).

---

[2] The debtors elected the state exemptions, under section 522(b)(2). We thus focus on Texas state law, which is the source of the exemptions claimed here. Section 42.001 of the Texas Property Code gives debtors the right to claim exemptions in certain personal property, up to a total fair market value of $60,000 for a family. Section 42.002 then lists the types of personal property eligible for that exemption. Subsection (a)(7) permits debtors to claim an exemption in "two firearms." Subsection (a)(1) permits a debtor to claim an exemption in "home furnishings, including family heirlooms." *See* TEX. PROP. CODE, §§ 42.001, 42.002(a) (Thomson West pamphl. ed. 2008).

[3] It appears that the remaining firearms that were claimed as exempt in the August 26, 2008 amended schedules were sold by the Trustee pursuant to an order entered by the court on January 7, 2009. The Trustee filed a report of the sale on January 23, 2009 [Docket No. 239].

2

Despite the change in the debtors' schedules, the Trustee maintains his objection to the Wilkinsons' claimed exemptions, asserting that the debtors are still trying to keep more than two firearms. The Trustee says that firearms are firearms, and cannot be claimed under another category, such as "home furnishings" as the debtors attempt to do in their amended Schedule C.

On November 14, 2008, the Wilkinsons filed a response to the Objection [Docket No. 197]. The debtors assert that those Guns that are not replicas saw action in wars that took place prior to 1898 and are each "affixed to a wooden plaque bearing a brass plate which describes the weapon… [and] adorn the walls of the Debtors' rural home…" *Response*, ¶ 15 at 4. Due to the age of the Guns, the debtors argue, they are no longer considered firearms under the Texas Property Code. Although the debtors cannot point to any specific provision of the Texas Property Code to support this contention (since none exists), the debtors rely by analogy on § 46.01 of the Texas Penal Code, which criminalizes possession of a firearm by certain persons (felons). The statute excludes from its definition of "firearm" any gun that is "(A) an antique or curio firearm manufactured before 1899; or (B) a replica of an antique or curio firearm manufactured before 1899, but only if the replica does not use rim fire or center fire ammunition." Thus, a felon in possession of the guns that now adorn the Wilkinsons' home would not, it is maintained, be guilty of a crime under section 46.01 of the Texas Penal Code. The debtors argue that, if the guns in question would not be treated as firearms for purposes of the Texas Penal Code, they should not be treated as firearms for purposes of the Texas Property Code's exemption statute either. The debtors also note that the federal government has a similar definition of firearm in 18 U.S.C. § 921(a)(3) (the Gun Control

3

Act) which excludes antique firearms[4] from its definition of a firearm. *See U.S. v. Mixon*, 457 F.3d 615, 616 (7th Cir. 2006). Thus, based upon the definition of firearm in the Texas Penal Code and the Gun Control Act, the debtors argue that the court should overrule the Trustee's objection to the debtors' exemption claim with respect to the Guns and allow the debtors to claim them as exempt home furnishings under § 42.002(a)(1) of the Texas Property Code.

## Analysis

### *May the Court Apply The Doctrine Of* **In Pari Materia** *And Use The Definition Of Firearm As Provided In The Texas Penal Code And The Gun Control Act In Interpreting The Texas Property Code?*

The Texas Property Code does not define the term 'firearm.' The debtors are asking the court to read 'firearm' in the Texas Property Code *in pari materia* with the definition found in the Texas Penal Code, which states that

> (3) 'Firearm' means any device designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use. Firearm does not include a firearm that may have, as an integral part, a folding knife blade or other characteristics of weapons made illegal by this chapter and that is:
> (A) an antique or curio firearm manufactured before 1899;
> or
> (B) a replica of an antique or curio firearm manufactured before 1899, but only if the replica does not use rim fire or center fire ammunition.

Tex. Penal Code § 46.01(3).[5] Similarly, the Wilkinsons refer the court to the definition of firearm in the Gun Control Act, which specifically excludes antique firearms. *See* 18

---

[4] 18 U.S.C. §§ 921(a)(3), (a)(16) defines antique firearms as those manufactured prior to 1898.

[5] As an aside, it should be noted that § 46.01 specifically limits its definitions to chapter 46 of the Penal Code. § 46.01 (saying "In this chapter…"). This limitation is noted only because a separate section of the Penal Code defines 'deadly weapon' as "(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE, § 1.07. And, although it is obviously not an issue before this court at this time, it is not entirely clear from the Penal

4

U.S.C. § 921(a)(3).[6] Antique firearms are defined as, *inter alia*, those firearms "manufactured in or before 1898." 18 U.S.C. § 921(a)(16). Both the Gun Control Act[7] and the Texas Penal Code[8] make it a crime for a felon to carry a "firearm" as that term is defined in the sections cited above. The Texas Property Code serves a different function, allowing debtors to exempt two firearms from their creditors' reach. TEX. PROP. CODE § 42.002(a)(7).

The Texas Government Code sets out certain rules of statutory construction for use by the courts with respect to Texas statutes. One provision of the Government Code addresses the appropriate application and use of the doctrine of *in pari materia*. TEX. GOV'T CODE, § 311.026(a)-(b) (Vernon 2005). The Texas Government Code provides

> (a) If a general provision conflicts with a special or local provision, the provisions shall be construed, if possible, so that effect is given to both.
>
> (b) If the conflict between the general provision and the special or local provision is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail.

TEX. GOV'T CODE, § 311.026(a)-(b). "Statutes found to be *in pari materia* are construed together, and, if possible, conflicts between the statutes are harmonized. In the case of an irreconcilable conflict, the specific statute controls over the more general statute." *In re J.M.R.*, 149 S.W.3d 289, 292 (Tex. App. – Austin 2004). The first step in employing the doctrine is to determine whether different statutory provisions even conflict. Only if a

---

Code's language that antique firearms would be excluded from the definition of deadly weapon, despite their exclusion from the definition of 'firearm' *for purposes of chapter 46 offenses*.

[6] The court notes that the Gun Control Act is irrelevant to the issue before it which deals exclusively with Texas law, *to wit*, the definition of firearm in the Texas Property Code. Presumably, the Wilkinsons cite to the Gun Control Act as an aside to their main argument that the Texas Penal Code's definition of 'firearm' applies to the Texas Property Code.

[7] 18 U.S.C. § 922(g)(1) provides that a "felon may not 'ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition.'" *United States v. Mixon*, 457 F.3d at 618 (citing to 18 U.S.C. § 922(g)(1)).

5

conflict exists is the court then obligated to proceed to the second step, that is, to harmonize the two so as to give effect to both. *Id.*

But this two step procedure is only invoked when the statutes in question have a similar object or purpose. If the Texas Property Code and the Texas Penal Code do not have a similar object or purpose, then the doctrine of *in pari materia* is not applicable at all.

> The most important factor in our *in pari materia* analysis is similarity of object or purpose. To determine whether two statutes share a common purpose, we consider whether the two statutes (1) are contained in the same legislative act; (2) require the same elements of proof; (3) involve different penalties; and (4) were clearly written to achieve the same objective. The adventitious occurrence of like or similar phrases, or even of similar subject matter, in laws enacted for wholly different ends will not justify applying the doctrine.

*In re J.M.R.*, 149 S.W.3d at 292 (citing *Burke v. State*, 28 S.W.3d 545 (Tex. Crim. App. 2000), *Alejos v. State*, 555 S.W.2d 444 (Tex. Crim. App. 1977); *Segura v. State*, 100 S.W.3d 652 (Tex. App.- Dallas 2003, no pet.)). In the context of both statutes' use of the term "firearm," the Texas Property Code and the Texas Penal Code do not have a similar object or purpose. One governs the relationship between debtors and creditors, limiting the latters' rights in order to assure debtors are permitted to keep a certain modicum of property regardless of how much they owe their creditors. *See In re Mitchell,* 103 B.R. 819 (Bankr. W.D.Tex. 1989); *In re Leva*, 96 B.R. 723, 727 n. 3 (Bankr. W.D. Tex. 1989). Firearms happen to be one of a number of specifically described items or categories of property deemed to be appropriate for debtors in this state to have, free of the demands of their creditors. *See id.* The Penal Code, meanwhile *criminalizes* ownership of certain types of firearms by certain kinds of individuals in Texas, to wit, convicted felons, in the

---

[8] Texas Penal Code § 46.04.

6

interests of protecting the peace and safety of the rest of the citizenry of Texas. *See Boyd v. State*, 899 S.W.2d 371, 374 (Tex.App.- Houston 1995). One statute focuses on what *all* Texans should be allowed to *keep* (at least relative to the claims of their creditors),[9] while the other statute focuses on what *certain* Texans (convicted felons) are *not* allowed to keep, for reasons having nothing to do with their creditors. One statute regulates commercial activity. One is a health and safety regulation. If one keeps more firearms than one should under the Property Code, the only "penalty" exacted is that creditors will be able to take them away from the debtor. If one is a felon and keeps or acquires a firearm, the penalty exacted can be a fine and loss of liberty.[10] Not surprisingly, the Texas Property Code and the Texas Penal Code are not contained in the same legislative act. *Compare* Acts 1973, 63rd Leg., p. 883, ch. 399, § 1 (Senate Bill 34) (first Penal Code defining firearm)[11] *with* Acts 1870, 12th Leg., p. 127, ch. LXXVI, § 2 (first Property Code explicitly exempting one gun).

---

[9] Here is how this court described the function and purpose of Texas' exemption law in an earlier opinion:

> [e]xemptions represent a statement of public policy regarding what the citizens of this state believe all persons are entitled to retain, no matter how much they might owe to their creditors. *See* TEX.CONST., Art. XVI, § 49, Interpretive Commentary (Vernon 1955). Some exemptions are preserved primarily because they truly are necessary to the very survival of the family as an independent economic unit not on the public dole. Others, such as jewelry, are allowed not so much to assure mere survival as to assure survival with a modicum of dignity… For the purpose of protecting debtors from destitution, or their families from deprivation of support, or the public from the danger of their becoming charges, the constitution provides that the legislature shall have the duty of enacting statutes which stipulate that certain personal property of debtors shall not be liable to seizure and sale under legal process for the payment of their debts . . . . The purpose underlying exemption legislation is securing to the unfortunate debtor the means to support himself and his family, the protection of the family being the main consideration. *Id.*

*Leva*, 96 B.R., at 727 n. 3.

[10] A Class A misdemeanor may be punished by: a fine in an amount of $4,000 or less, confinement in jail for up to 1 year, or both. Tex. Penal Code § 12.21. A third degree felony is punishable by jail time between 2 and 10 years and, additionally, a potential fine in the amount of $10,000. *Id.* § 12.34.

[11] What is now § 46.01 of the Texas Penal Code references Vernon's Ann. P.C. (1925) art. 1161 (repealed). Art. 1161 of the 1925 law only defines 'bowie knife' and 'dagger;' it does not define 'firearm' or 'gun.'

Thus, whether a convicted felon may carry an antique firearm – apparently deemed by the legislature not to be a threat to public safety due to its age – does not have much to do at all with whether a creditor may reach that same antique gun for purposes of getting repaid.[12] It is certainly not a threat to public safety for a debtor to repay his debts by the sale of an antique gun. (In fact, an antique handgun may be worth more than a new one, and therefore of particular interest to a creditor or a bankruptcy trustee.) And, although it may have been true that, originally, the legislature allowed a debtor to exempt one gun to protect his own or his family's safety, *see discussion infra*, at 6, this court could not find any evidence that the legislature allows a debtor to exempt two guns to protect the *public's* safety.

For these reasons, the court concludes that the personal property exemption scheme in the Texas Property Code and the Texas Penal Code's prohibition on what felons can and cannot own, on pain of a fine or jail time, do not have an even remotely common or similar purpose or object. Thus, the prerequisite for recourse to the doctrine of *in pari materia* is never met in this case. It is not only unnecessary but affirmatively inappropriate for the court to consult a definition in another statute whose object and purpose is in no way similar in order to arrive at the interpretation of the same term used in the Texas Property Code. As the court of appeals in *J.M.R.* noted, "The adventitious occurrence of like or similar phrases, or even of similar subject matter, in laws enacted

---

However, art. 1151 of the 1925 law, titled "Assault with a prohibited weapon," provides that if a person is in illegal possession of a "pistol, dirk, dagger, slung shot, sword cane, spear or knuckles…," and such person "commits an assault or an assault and battery… he shall be deemed guilty of an assault with a prohibited weapon and upon conviction shall be punished by a fine not to exceed two hundred dollars or by imprisonment in jail not to exceed two years, or by confinement in the penitentiary for not more than five years." However, the 1925 version of the Penal Code does not define 'firearm.' Pursuant to my research, the first time 'firearm' was defined was in § 46.01 of the 1973 Penal Code.

[12] And, indeed, the debtors did not cite any case finding a similarity between the Texas Property Code and the Texas Penal Code or the Gun Control Act.

8

for wholly different ends will not justify applying the doctrine." *In re J.M.R.*, 149 S.W.3d at 292.

If we are to discover what the term "firearm" means in the Texas Property Code then, we will have to look elsewhere than the Texas Penal Code (and certainly elsewhere than a federal criminal statute, given that we are seeking the meaning of a term used in a state civil exemption statute).

### *What Does 'Firearm' Mean In The Texas Property Code?*

To determine the meaning of 'firearm' as it is used in the Texas Property Code the court must go back to the basics of statutory construction.

> When interpreting statutes we try to give effect to legislative intent. 'Legislative intent remains the polestar of statutory construction.' However, it is cardinal law in Texas that a court construes a statute, 'first, by looking to the plain and common meaning of the statute's words.' If the meaning of the statutory language is unambiguous, we adopt, with few exceptions, the interpretation supported by the plain meaning of the provision's words and terms. Further, if a statute is unambiguous, rules of construction or other extrinsic aids cannot be used to create ambiguity.' When the purpose of a legislative enactment is obvious from the language of the law itself, there is nothing left to construction.

*Fitzgerald v. Advanced Spine Fixation Systems, Inc.*, 996 S.W.2d 864, 865-866 (Tex. 1999). The Texas Government Code instructs that "words and phrases shall be read in context and construed according to the rules of grammar and common usage." TEX. GOV'T CODE, § 311.011(a). If the language of a statute is ambiguous, to interpret the statute the court is aided by the following

> (1) the object sought to be attained; (2) the circumstances under which the statute was enacted; (3) legislative history; (4) common law or former statutory provisions, including laws on the same or similar subjects; (5) the consequences of a particular construction; (6) administrative construction of the statute; and (7) title (caption), preamble, and emergency provisions.

9

TEX. GOV'T CODE § 311.023; *In re Leva*, 96 B.R. at 725. Lastly, the Texas Government Code also instructs that courts should give meaning to all of the words in a statute. *Id.,* § 311.021(2).

*The Texas Property Code*

Up to a cap of $60,000 per family, or $30,000 per single person, the current iteration of the Texas Property Code allows a debtor to exempt certain categories of personal property from the reach of creditors, including two firearms. PROP. CODE, §§ 42.001(a)(1)-(2), 42.002(a)(7). Another permitted category of personal property available for exemption is "home furnishings, including family heirlooms…" TEX. PROP. CODE § 42.002(a)(1). Because the Texas Property Code does not define 'firearm,' the court must look to other interpretive aids, the first of which is to consult the term's ordinary meaning.

Black's Law Dictionary says that a firearm is "[a] weapon that expels a projectile (such as a bullet or pellets) by the combustion of gunpowder or other explosive." BLACK'S LAW DICTIONARY 666 (8TH Ed. 2004). The eighth edition of Black's does not define 'gun,' but the centennial (sixth) edition of Black's did, telling us that a gun is a "[p]ortable firearm such as a rifle, pistol, revolver, shotgun, carbine, etc." BLACK'S LAW DICTIONARY 708 (6TH Ed. 1990). The centennial edition of Black's defined 'firearm' more broadly than does the Eighth Edition:

> An instrument used in the propulsion of shot, shell, or bullets by the action of gunpowder exploded within it. A weapon which acts by force of gunpowder. This word comprises all sorts of guns, fowling-pieces, blunderbusses, pistols, etc. In addition, grenade shells, fuses, and powder may be considered 'firearm' even though disassembled… The term 'firearm' means any weapon which is designed to or may readily be converted to expel any projectile by the action of an explosive; or the frame or receiver of any such weapon.

10

*Id.* at 634. Webster's Dictionary defines firearm as "a weapon from which a shot is discharged by gunpowder-usually used of small arms." Merriam-Webster Online Dictionary (2009) *available at* http://www.merriam-webster.com/dictionary/firearm. Webster's defines gun as "a portable firearm… [or] something suggesting a gun in shape or function." Merriam-Webster Online Dictionary (2009) *available at* http://www.merriam-webster.com/dictionary/gun. Notably, none of these definitions excludes antique firearms or guns from the definition of what constitutes a firearm. None of these definitions requires that the item be in working order to constitute a firearm. The definitions are all-encompassing. For instance, the centennial version of Black's only requires that a weapon be *designed* to expel a projectile, and, similarly, Webster's definition of gun is something merely suggesting a gun in shape or function.

      One way to test a word's meaning is to examine how it is ordinarily used. In that regard, common usage gives a word meaning when it can be said that one person using a given word will be easily understood to mean the same thing as the user intended the word to convey. *See* Ludwig Wittgenstein, *Philosophical Investigations,* at 43 (G.E.M. Anscombe, transl) (Oxford Press 1953) ("the meaning of a word is its use in the language"). In ordinary usage, the fact that a firearm or gun is antique would not preclude one from referring to it as a firearm. One visiting the Wilkinsons' home could well comment "that's a very nice firearm you have mounted up there on the wall," and no one would wonder what he or she was talking about.[13] By the same token, one would be surprised if, in response to the query, "what's that firearm," Wilkinson were to reply, "that's not a firearm, that's a home furnishing."

11

Under both common usage and the dictionary definitions (which are, in essence, scholarly reports of common usage), an 18th century Blunderbuss is still a firearm. The Texas Property Code's use of the term "firearm" is not ambiguous and, under the common meaning of the term firearm, the Wilkinsons' Guns are very clearly firearms.

Even if the term *were* thought to be ambiguous, however, the court would still arrive at the same conclusion regarding its intended scope in the Texas Property Code. Although Texas, as early as 1866, listed specific items of personal property as qualified for exemption,[14] guns or firearms did not specifically show up on the list until the Act of 1870, at which point "one gun" were, for the first time, explicitly protected from forced sale for debts. Acts 1870, 12th Leg., p. 127, ch. LXXVI, § 2 *reprinted in* TEX. REV. CIV. STAT. ANN., art. 2335 (repealed) (1879). It is no stretch to believe that guns were vital to a Texan's survival in 1870, perhaps explaining their being included on the list of property qualified for exemption. The court was unable to locate either legislative reports or testimony to glean the legislature's intent in exempting a gun in 1870, but a Texas Supreme Court case from 1857 perhaps sheds some light on what might have been on the Legislature's mind just over a decade later. In *Choate v. Redding*, 18 Tex. 579 (1857), the Texas Supreme Court rather reluctantly denied a debtor's request that his rifle gun be

---

[13] By the same token, one might pause before readily lumping the Blunderbuss with the table lamps as "home furnishings" in ordinary conversation.

[14] The Act of 1866 provided that the following items were exempt

> household and kitchen furniture, not to exceed five hundred dollars in value; all implements of husbandry; all tools, apparatus and books, belonging to any trade or profession; five milch cows, two yoke or work oxen, and two horses, one wagon, twenty hogs, twenty head of sheep, and on year's supply of provisions; all saddles, bridles and harness necessary for the use of the family… [and] [t]here shall, in like manner, be reserved to every citizen, not a head of a family, the following property, to wit: One horse, bridle and saddle; all wearing apparel; all tools, books and apparatus belonging to his trade or profession.

Acts 1866, 11th Leg., p. 160, ch. CXXXV, §§ 1-2.

exempt from his creditor's reach. *See generally*, 18 Tex. 579. The court lamented that it was "extraordinary" that there was not a Texas statute exempting the gun from execution. *Id.* at 580. The court colorfully explained its frustration thusly:

> It has been comparatively but a few years since the first settlements of Americans were made in Texas. The whole country was then infested by savages. Subsequently there were hostilities with Mexicans, and the frontiers are still exposed to the incursions of Indians. The country has been settled, and still is settling, by, in a great measure, force of arms. The people of Texas are now, and ever have been, emphatically an armed population.

*Id.* at 581. The court added that the right to bear arms was protected in both the Constitutions of the United States and Texas for the purpose of securing a free state through a well-armed militia. *Id.* (Indeed, the court dryly observed that, if militia laws were enforced, were a man to show up to the "muster ground" without his gun, he could be fined). Said the court – with evident chagrin – although "the right to keep and bear arms cannot be infringed by legislation, yet, strange as it may be, it must succumb to the power of a creditor…" *Id.* Based upon the court's analysis, it would not be a stretch to infer that the Texas Legislature, in adding "one gun" to the list of personal property eligible for exemption, intended, consistent with the sentiments expressed in *Choate,* to provide Texans with the ability to defend their home and provide for their family, and perhaps to be able, regardless their financial circumstances, to answer the call to arms should the militia be called up.[15]

It was not until 1973 that Texas changed the language of the statute to allow a debtor to exempt "two firearms," as opposed to one gun. Acts 1935, 44th Leg., p. 384, ch. 145, § 1, *reprinted* Tex.Rev.Civ.Stat.Ann., art. 3832 (repealed) (Vernon 1968); Acts

13

1973, 63rd Leg., p. 1628, ch. 588, § 3 *reprinted* Tex.Rev.Civ.Stat.Ann., art. 3836 (repealed) (Vernon 1975) (establishing "…two firearms and athletic and sporting equipment…," to the extent reasonably necessary, as exempt from creditor's reach to satisfy liabilities). The reason for the changes to the gun/firearm exemption in 1973 was not discussed in either the House Report or the Senate Report. However, in testimony before the Texas Senate incident to this legislation, Professor Joseph McKnight, on behalf of the State Bar of Texas, stated that there were 5 objectives to the proposed law: (1) modernize the language and re-arrange the exemptions, (2) put upper limits on the personal property exemptions, (3) give creditors some remedy if a debtor seeks to defraud creditors by converting property from non-exempt property to exempt property, (4) extend the available exemptions to single adults, and (5) to clarify existing law and to give broad discretion to bankruptcy courts. *Hearing on SB 944 and HB 617 Before the S. Jurisprudence Comm.*, 63rd Leg., 63rd Regular Session (Tex. 1973) (statement of Joe McKnight, representative, State Bar of Texas).[16] There was thus no substantive change apparently intended in the change from the use of the word 'gun' to 'firearm.'

Additionally, McKnight's testimony did not discuss the proposed change in the number of firearms that debtors were to be allowed to exempt from one to two. *Id.* Also, athletic and sporting equipment first appeared in 1973, without comment in the sparse legislative history. *See In re Schwarzbach*, 1989 WL 360742 (Bankr. W.D. Tex., May 22, 1989) (*citing* Acts 1935, 44th Leg., p. 384, ch. 145, § 1, *reprinted* Tex.Rev.Civ.Stat.Ann., art. 3832 (repealed) (Vernon 1968); Acts 1973, 63rd Leg., p. 1628, ch. 588, § 3 *reprinted*

---

[15] This early authority also suggests that the only firearms that it made sense for a debtor to even claim as exempt were *working* firearms – creditors could have the firearms that didn't work, as they would be of no use against "savages" or in the Texas Militia.

14

Tex.Rev.Civ.Stat.Ann., art. 3836 (repealed) (Vernon 1975) ("…two firearms and athletic and sporting equipment…," to the extent reasonably necessary, are exempt personal property)). He did, however, talk about another innovation in the proposed law, a dollar cap on the total amount of personal property that could be claimed as exempt. With a cap on the total, creditors were protected from the possibility that a debtor would "load up" on exempt property, leaving nothing for creditors, and McKnight discussed this concern with the Committee. *Hearings on SB 944* (statement of Joe McKnight). A fair inference is that the Legislature in 1973 was less concerned with expanding the exemptions for debtors and more concerned with protecting creditors from abuse. So long as the dollar amount of personalty was capped, it would matter little to creditors what categories of personal property were eligible for exemption. In the 1973 enactment, the Legislature simply ratified (with minor modifications) the policy choices that earlier legislatures had made regarding what a debtor ought to be able to keep, free from the reach of creditors.

Obviously, by 1973, Texas was no longer the frontier it had been when the Texas Supreme Court discussed the vital role guns played in everyday life in 1857. *Choate v. Redding*, 18 Tex. at 581; *In re Schwarzbach*, 1989 WL 360742, at *4. However, "the [gun] exemption survived… [as] a witness to the Texas ethos that still cherishes the frontier spirit, and celebrates it every hunting season." *In re Schwarzbach*, 1989 WL 360742, at *4. In fact, because in 1973 the statute required that personal property be reasonably necessary to the debtor, the specific allowance of two guns could be read as a nod to "[t]he typical hunter serious about his or her sport [since he or she] will have a shotgun for birds and a rifle for other game- two guns." *Id.* As it turned out, the debtor in

---

[16] Available at http://www.tsl.state.tx.us/ref/senatetapes/63/index.html#juris (File #901, minutes 9:40-19:20)

*Schwarzbach*, an avid hunter, was not allowed to exempt more than two of his guns, on the theory that the additional guns could qualify as athletic and sporting equipment. *See id.* This court there held that, because the Property Code specifically allowed only two guns, it was not appropriate to allow another category, athletic and sporting equipment, to in effect *expand* the number of allowed firearms beyond two. *Id.* To do so would eviscerate the numerical limitation on the number of firearms that the Legislature had determined a debtor should be permitted to keep. *Id.* If debtors in Texas are to be permitted to claim more than two firearms as exempt, it will be up to the Texas Legislature to amend section 42.002(a)(7) to so provide.

Here, the Wilkinsons assert that the Guns are exempt under § 42.002(a)(1), which allows debtors to exempt "home furnishings, including heirlooms." But, the reasoning in *Schwarzbach* applies equally to § 42.002(a)(1). Just as a "spillover" was not permitted in *Schwarzbach,* neither is it permitted here. A firearm might be a species of sporting equipment, but the Texas Legislature, by giving a specific exemption for firearms, effectively excluded them from being sporting equipment as well, at least for exemption purposes. And a firearm may be a very nice home decoration if mounted and hung on the wall, but the Texas Legislature, by giving a specific exemption for firearms, effectively excluded it from qualifying as a home furnishing as well, for exemption purposes. Firearms are firearms, and debtors are specifically limited to only two, even if they are also home furnishings or sporting equipment. As this court stated in *In re Mitchell*, 103 B.R. 819, 823 (Bankr. W.D. Tex. 1989), the Texas Property Code, subject to the cap in § 42.001(a), provides Texans with an explicit, approved list of items that the legislature has decided debtors should be allowed to keep regardless of what they owe their creditors.

16

"Exemptions are in fact a limit on a creditor's right to satisfaction of its claim out of the debtor's assets. The limitations are imposed for reasons of public policy. There is no *public* policy served in preserving the lifestyles of the rich and bankrupt." *Id.* n. 7 (emphasis original). Texans are thus required to "pick items off an approved list of items which, according to the legislature, are the sort of things sufficiently important for a Texas debtor to keep regardless of the claims of creditors." *Id.*

If this court were to allow the Wilkinsons to exempt the Guns as home furnishings regardless of their so clearly being firearms, the court would be undermining the legislature's policy decision to specifically allow Texans to exempt only two firearms. The court declines the Wilkinsons' offer to legislate in the legislature's stead. Therefore, for the reasons stated above, the debtors may not exempt the Guns as home furnishings and must instead turn them over to the Trustee.

An order will be entered consistent with this decision.