**SIGNED this 22nd day of July, 2011.**

_____
**LEIF M. CLARK**
**UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| Tolbert S. Wilkinson, M.D. & | ) | |
| Suzanne T. Wilkinson | ) | Case No. 07-50189 |
| | ) | |
| | ) | Chapter 7 |
| Debtors. | ) | |

### Memorandum Decision on Motion for Reconsideration
### of Order Disallowing Claim

Marix, as the mortgage servicer and attorney-in-fact for EMC Mortgage ("EMC"), has requested reconsideration, pursuant to section 502(j) of the Bankruptcy Code and/or Rule 60(b) of the Federal Rules of Civil Procedure (applicable in bankruptcy by virtue of Rule 9024 of the Federal Rules of Bankruptcy Procedure), of an order sustaining the chapter 7 trustee's objection to EMC's claim. The order disallowed the claim in its entirety. This decision constitutes the court's findings of fact and conclusions of law with respect to that motion.

1

**Background Facts**

The debtors originally filed for chapter 13 on January 31, 2007. In their schedules they listed EMC Mortgage as a secured creditor with a lien on property in Bandera, Texas. The debtors scheduled this property as exempt. Pursuant to this court's standing order, the Notice of First Meeting of Creditors Pursuant to Section 341 was issued out of the office of the Chapter 13 Trustee on February 7, 2007. Among other things, the Notice stated that, absent timely objection, all claims would be deemed allowed as set forth in the Trustee's Recommendation Concerning Claims.

On March 12, 2007 EMC filed a proof of claim as a secured creditor, in the amount of $122,534.29 with arrears of $27,392.04. EMC attached a copy of a note and deed of trust to the proof of claim. The Note and Deed of Trust were both in favor of San Antonio Savings Association. The attachments themselves do not show how (or whether) EMC came to be the holder of this claim.

The proof of claim was submitted on the Official Form in effect as of that time (Official Form 10, eff. 10/05). In the block entitled "Name and address to which notices should be sent," the Proof of Claim says "EMC Mortgage, Post Office Box 293150, Lewisville, Texas 75029-3150." The Proof of Claim was electronically signed (and filed) by two attorneys, Hilary B. Bonial and Joe M. Lozano, "as Creditor's Authorized Agent." Ms. Bonial and Mr. Lozano are attorneys with the law firm of Brice, Vander Linden & Wernick, P.C. That firm had earlier filed a Request for Service of Notices on March 1, 2007. The notice requested that notices of any hearing, proceeding or report be served on counsel at P. O. Box 829009, Dallas, Texas 75382-9009, and was signed by the firm as "Authorized Agent for EMC Mortgage Corporation."

A chapter 13 plan was eventually confirmed on October 3, 2007. The confirmation order stated that "[u]nless an objection or response is timely filed as to the treatment of any claim, the claim will be allowed only in the manner and amount listed in the Trustee's Recommendation Concerning Claims, and such treatment will be final and binding on all parties without further order of the court." (*See* Docket No. 93). The order further stated that "[r]esponses or objections to the Trustee's Recommendation Concerning Claims, must be filed within thirty (30) days from the date of service of the Trustee's Recommendation Concerning Claims." On December 7, 2007, the chapter 13 trustee filed a claims recommendation listing EMC as a secured creditor and proposed to "allow" the claim in the amount of $122,534.29 [Docket No. 95]. No objection to EMC's claim was filed by anyone within the 30 day objection period.

The debtor had failed to list a contingent creditor on his schedules – a malpractice claim. The claimant learned of the case after confirmation, entered an appearance, and asked that the case be converted to chapter 7. On July 25, 2008, the debtors' case was in fact so converted. Once the debtors' case was converted to chapter 7, a new claims bar date of October 27, 2008 was established, per Bankruptcy Rule 1019(2). [Docket No. 125]. However, as EMC's actually

filed proof of claim in the debtors' chapter 13 case was deemed filed in the new chapter 7 case, per Rule 1019(3), EMC filed no further claim.

After conversion, EMC sought relief from the automatic stay, claiming that regular payments on its loan had ceased and that there was at that time over four months of post-petition arrears due to it. The chapter 7 trustee sought a continuance, on grounds that there was some uncertainty whether some part of the property claimed to be subject to EMC's mortgage was exempt or not exempt. The debtor also responded to the motion, contending that EMC needed to prove that it was in fact the rightful owner and holder of the note. EMC thereafter withdrew its motion. The trustee, meanwhile, worked to resolve disputes over exemption claims and retained a surveyor. EMC took no further steps to seek relief from the stay. Its counsel was presumably following the course of events in the case (as electronic filers, they were notified of every pleading filed in the case).

The exemption issue was finally resolved in January 2010. EMC, it will be recalled, had claimed a security interest, by virtue of the mortgage granted to San Antonio Saving Association, on 52 acres of property in Bandera County, Texas. Only 1.22 acres of these 52 acres were later found to be the debtors' exempt homestead, with the balance of the acreage now available for administration by the chapter 7 trustee. The chapter 7 trustee then combined the remaining 51.23 acres with a 46.21 acre tract also owned by the estate to form a 97.44 acre tract of land, which the trustee then sought to sell by motion filed July 28, 2010 pursuant to section 363(f) of the Code. The motion to sell acknowledged that EMC Mortgage had asserted a lien on all or part of this property but noted the trustee's concern that EMC had not shown that it was the rightful owner and holder of the claim. The motion proposed that EMC be paid from the proceeds of the sale, but only as and when it first furnished the trustee and the court with proof of its entitlement to a portion of the sale proceeds, and in what amount – this as a result of questions that had arisen regarding the validity of EMC's asserted security interest.[1] EMC claims that it was never properly served with the Trustee's motion to sell, but the certificate of service shows service on EMC at the address listed in their proof of claim, as well as service to the post office box of the firm of Brice, Vander Linden, EMC's attorneys in the case, at the address the firm had supplied to the court in their Request for Service of Notices. EMC raised no objection to the sale, and neither did anyone else. The sale was approved in August 2010.

On October 7, 2010, the chapter 7 trustee, having heard nothing further from EMC, filed a formal objection to EMC's claim, asserting that, absent proof, EMC had not established that it

---

[1] Here is what the Motion said: "There is a disputed lien on the property allegedly held by EMC Mortgage in the approximate amount of $122,534.00. If the lien claim is approved by the Court, the EMC lien will be paid in full upon further Order of the Court. EMC Mortgage needs to provide evidence that they are the proper holder of the San Antonio Savings Note attached to their Proof of Claim." Trustee's Motion to Sell Property of Debtors Free and Clear of All Liens and Interest Except Ad Valorem Taxes [Doc. # 336], at para. 8.

was the owner and holder of either the note or the deed of trust on the property.[2] EMC asserts that it was never properly served with this pleading either, but, once again, EMC was served at the address it had listed on its proof of claim as the address to which notices were to be sent in the case. A copy of the pleading was also served on EMC at the post office box of Brice, Vander Linden, the firm listed as EMC's authorized agent in the case. The objection to claim contained negative notice language to the effect that the objection would be sustained if a response to the pleading was not timely filed. No response was filed by EMC or its counsel.

On November 3, 2010, the court signed an order sustaining the Trustee's objection to EMC's claim, there having been no response to the claim objection. The order [Docket No. 347] stated that "Claim No. 9 filed by EMC Mortgage in the amount of $122,534.29 is hereby denied as a secured claim. Claimant has no evidence that it is the holder of the Note. This claim will not be paid a dividend by the Trustee in the case." This is the order that is the subject of Marix' motion for reconsideration.

On March 24, 2011, nearly 5 months after the court entered its order disallowing EMC's claim, Marix, ostensibly on behalf of EMC, first appeared in the case. It filed an objection to the Trustee's final report for distribution on grounds that there was no provision for any payments to be made to EMC. The court approved the Trustee's final report on April 5, 2011, but Marix, on behalf of EMC, filed a motion to reconsider that order on April 13, 2011. On April 25, 2011, the court granted Marix' motion to reconsider, and set aside the order of distribution approving the Trustee's application for compensation, stating that "[t]he court cannot let the final report stand in its current form until the claim of EMC is properly disposed of." (*See* Docket No. 383).[3]

Marix also filed this motion to reconsider the court's November 3, 2010, order disallowing EMC's claim. The court also set a hearing on Marix' related motion seeking reconsideration of the order disallowing EMC's claim. That hearing was set for May 24, 2011. In the motion, Marix argued that it sought relief under section 502(j) and Rule 3008 of the Federal Rules of Bankruptcy Procedure. The motion acknowledged that the standards for reconsideration essentially track those set out in Rule 60(b) of the Federal Rules of Civil Procedure.

Recognizing the need to establish cause for reconsideration of the order disallowing EMC's claim, Marix raises a number of arguments. First, it alleges improper service of process, contending that EMC was not properly served pursuant to Rule 7004(b)(3), which it claims had to be satisfied for service to be proper. Second, it advises the court that EMC appointed Marix as its servicing agent for this note, and that the claims objection happened to be filed in this transition period. Says Marix, "any failure to respond to the Claim Objection resulted from

---

[2] The Objection says, "Claimant [EMC] has no evidence that it is the holder of the Note." The pleading asked the court to enter an order denying the claim *in toto*.

[3] Technically, no order had been submitted formally approving the trustee's final report, so there was no order to set aside. However, the order authorizing distribution granted some of the relief sought in the final report, so that is the order the court ultimately set aside. No order has yet been entered approving the final report.

mistake and confusion. Marix was unaware of the Claim Objection or the Order until several months later." Motion at 26. Third, Marix argues that the equities of the case justify the court's reconsidering its order disallowing the claim, because the debtor did not seriously contest this claim, and neither did the chapter 13 trustee. Further, Marix says it has evidence to show that EMC is in fact the owner and holder of the note that forms the basis for this indebtedness. EMC will suffer great harm if the order sustaining the objection is permitted to stand, while the debtors will suffer no harm. EMC attached copies of assignment documents which it claims establish EMC as the owner and holder of the Note and accompanying lien.

In a separate section, Marix argues that cause is established under one or more of the provisions of Rule 60(b). First, Marix argues excusable neglect. It claims no prejudice to the debtors if the claim is allowed (though it does not address prejudice to the largest unsecured creditor of the estate, whose recovery will be substantially diminished if the EMC claim is allowed, and which has already suffered significant delay in a distribution for which it has been waiting for over two years, as a result of these motions). Marix says that the failure to respond to the objection was the result of the new servicer taking over the responsibility for the claim. Marix adds that, besides, the objection was not specifically addressed to the attention of an officer or agent of EMC.[4]

In the alternative, Marix argues that the order disallowing EMC's claim should be set aside under Rule 60(b)(4) as a void judgment. This argument turns on Marix' contention that service of the claims objection had to be accomplished by strict compliance with Rule 7004(b)(3) by serving the objection "to the attention of an officer, a managing or general agent, or an agent authorized by law." That is, even if the name of the creditor was correct and even if the address was also correct, omitting the foregoing "to the attention" language in the address, says Marix, renders any resulting judgment or order void. And if the order is void, says Marix, then the order should be set aside pursuant to Rule 60(b)(4).

The holder of 98% of the unsecured claims ("Haley") filed an objection to Marix' motion to reconsider the order disallowing EMC's claim. In its pleading, Haley first argued that Marix lacked standing to seek reconsideration of the order disallowing EMC's claim because EMC was not the holder of the note at issue. Haley pointed out that, although the last allonge to the note showed that EMC transferred the note to JP Morgan Chase,[5] there was no allonge or

---

[4] This argument is internally inconsistent. On the one hand, Marix says that the objection was not dealt with because it was Marix that had taken over the note and *Marix* was unaware of the claims objection. On the other hand, Marix says that the objection should have been addressed to the attention of an officer or agent *of EMC*, which evidently no longer had the responsibility for managing the note. If the basis for excusable neglect was the transfer of duties to Marix prior to the claims objection being filed, then how the trustee might have addressed the notice to *EMC* is irrelevant. The important question is why Marix did not let the estate know that notices regarding the claim should be addressed to the attention of Marix. Certainly, the estate could not be expected to know of the internal business decisions of EMC, JPMorgan Chase, or Marix with regard to the handling of this claim.

[5] While the record was not entirely satisfactory on the point, it appears that JPMorgan Chase is the successor in interest to EMC, thanks to some sort of acquisition transaction.

endorsement for the transfer of the note from First Bank National Association (an apparent successor in the chain of ownership that began with San Antonio Savings Association) into Washington Mutual Bank, EMC's own predecessor in interest. Absent such endorsement, the subsequent transfer by Washington Mutual to EMC could not be valid. *See* Tex. Bus. & Comm. Code § 3.203(c) ("Unless otherwise agreed, if an instrument is transferred for value and the transferee does not become a holder because of lack of indorsement by the transferor, the transferee has a specifically enforceable right to the unqualified indorsement of the transferor, but negotiation of the instrument does not occur until the indorsement is made."). Haley also pointed out that there appears to have been a retroactive *assignment* from First Bank to Washington Mutual attached as Exhibit 5 to Marix' motion, but, says Haley, this document should be viewed with suspicion considering it was executed on January 27, 2009 (almost 2 years *after* EMC filed its claim in this case, and the day *after* EMC withdrew its motion for relief from stay).

At hearing, the court indicated to the parties that it would consider the question whether Marix had established grounds for reconsideration, pursuant to Rule 60(b) and section 502(j). As part of that case, Marix was permitted to put on evidence with regard to the merits of its defense to the claims objection, to support its contention that it had meritorious defense. Indeed, the bulk of Marix' evidence was devoted to this aspect of its case. Virtually no evidence was presented in support of Marix' excusable neglect argument. Marix devoted considerable time to its Rule 60(b)(4) "void judgment" argument, though that required little in the way of evidence, beyond testimony from an EMC employee that she did not see the trustee's objection to the claim, and that EMC had not been able to find any mailing from the trustee. The trustee countered that the notice and copy of pleading sent to EMC was not returned undelivered.

The court took the matter under submission, to consider whether cause had been established to set aside the order sustaining the trustee's objection to the claim.

### Discussion

The essential question before the court is whether Marix has demonstrated cause to reconsider the order sustaining the trustee's objection to the claim of EMC.[6] The court concludes that it has not.

Section 502(j) provides that "[a] claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case…." 11 U.S.C. § 502(j). Section 502(j) necessarily overlaps with Bankruptcy Rule 9024 governing reconsideration of final orders. In *Taylor v. Traina (In re Westeen)*, the

---

[6] At the hearing, the parties contested the preliminary issue of EMC's standing, as the holder or owner of the underlying note, to even seek reconsideration. EMC was unable to produce an original copy of the note, though the pleadings and arguments in this case had made it abundantly clear that EMC's status as owner and holder of the note was the principal basis for contesting EMC's claim. Because the court concludes that EMC has not established grounds for reconsideration of the order disallowing its claim, the court need not reopen the evidence to allow EMC to attempt to produce the original note (assuming it even could).

6

district court for the Eastern District of Louisiana explained the Fifth Circuit's approach to this overlap as follows:

> A bankruptcy court may reconsider the allowance or disallowance of proofs of claim 'for cause.' As the Advisory Committee Note to Bankruptcy Rule 3008 explains, a bankruptcy court's discretion in deciding whether to reconsider a claim is virtually plenary. The bankruptcy court may decline to reconsider without a hearing or notice to the parties involved. If the court grants reconsideration, the court may readjust the claim in any fashion 'according to the equities of the case.' The Fifth Circuit stresses that 'the court's broad discretion should not, however, encourage parties to avoid the usual rules for finality of contested matters.' Bankruptcy Rule 9024 incorporates Federal Rule of Civil Procedure 60 into all matters governed by the Bankruptcy Rules except, inter alia, 'the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(b)....' The Fifth Circuit interprets Rule 9024 to provide that, 'when a proof of claim has in fact been litigated between parties to a bankruptcy proceeding, the litigants must seek reconsideration of the bankruptcy court's determination pursuant to the usual Rule 60 standards if they elect not to pursue a timely appeal of the original order allowing or disallowing the claim.'

2000 U.S. Dist. LEXIS 4344, at *12-14 (E.D. La. Mar. 30, 2000) (citing *Colley v. Nat'l Bank of Texas (In re Colley)*, 814 F.2d 1008, 1010 (5th Cir. 1987)).

However, there is some tension among the lower courts within the Fifth Circuit as to whether Rule 60(b) applies to such motions when the claimholder simply fails to respond to the claims objection, resulting in the entry of an order without further hearing. *Compare In re Jack Kline Co.*, 440 B.R. 712, 741 (Bankr. S.D. Tex. 2010) (interpreting the Fifth Circuit's holding in *Colley* to mean that "if the parties have not litigated the merits of the proof of claim, Rule 60 is inapplicable and the bankruptcy court has wide discretion pursuant to § 502(j) to determine whether 'cause' exists for reconsidering the allowance of a claim[,]" but "[i]f the parties have litigated the merits of the proof of claim, [] then the bankruptcy court must apply Rule 60(b) in determining whether 'cause' exists for reconsidering the allowance of a claim") *with In re Gonzalez*, 372 B.R. 837, 840-41 (Bankr. W.D. Tex. 2007) (holding that Rule 60(b) is necessarily applicable if the motion to reconsider is filed more than ten days after the order disallowing the claim, even if the motion is couched as one under section 502(j), and even though the objection to the claim was not litigated).

7

Here, the court's order granting the chapter 7 Trustee's objection to EMC's claim was entered after a notice period had elapsed without a response from the creditor.[7] Thus, the merits of the claim objection were not "actually litigated." *See Litton Loan Servicing, L.L.P. v. Eads (In re Eads)*, 417 B.R. 728, 741 (Bankr. E.D. Tex. 2009) ("A claim that is allowed or disallowed based on a party's inaction is not, in fact, litigated or decided upon the merits.") (citing *Colley v. Nat'l Bank of Texas (In re Colley)*, 814 F.2d 1008, 1010 (5th Cir. 1987)). The issue raised by the courts in *Jack Kline* and *Gonzalez* is thus directly raised.

By the same token, however, the objection to claim did call into question EMC's right to assert the claim, and gave clear notice on its face that, absent a timely response, the objection would be sustained. Furthermore, EMC had already filed a claim in the case, and EMC's counsel had early on filed a notice of appearance in the case as well. It has been held, in circumstances such as these that, for purposes of Rule 9024, "the existence of a contest was not contingent upon [the creditor] showing up at the hearing; a contest … arose upon [the creditor's] receipt of notice of the Debtor's objection and notice of the hearing." *In re Wyatt*, 368 B.R. 99, 103-04 (Bankr. D.N.H. 2007); *see also In re Gonzalez*, 372 B.R. at 841 ("While the Fifth Circuit thus endorses hearings on the merits in preference to default judgments, it also does not condone ignoring clear, simple deadlines -- especially when no reason is offered for why the deadline was missed in the first place"). The "cause" standard in section 502(j) is not satisfied by a claimant's simply raising an argument that its claim should have been allowed on its merits. Were that the law, then a claimant with a "valid basis" for allowance could simply ignore the claims allowance process entirely, choosing to raise its "valid basis" at any later time it might choose, without ever having to address why the grounds for such allowance were not timely presented to the court in the first place. The court reads section 502(j) and its "cause" standard to require a movant to *first* establish some reason for disturbing the finality of the claims determination process – and simply claiming that one is now ready to present a valid basis for opposing the objection, without

_____

[7] The objection to claim was styled "Chapter 7 Trustee's Objection to Claim No. 9 Filed by EMC Mortgage (with 21-Day Language)." Immediately below the title, the following statement was set out, in bold type: "THIS PLEADING REQUESTS RELIEF THAT MAY BE ADVERSE TO YOUR INTERESTS." That statement was followed by the following statement, also in bold type: "IF NO TIMELY RESPONSE IS FILED WITHIN TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE, THE RELIEF REQUESTED HEREIN MAY BE GRANTED WITHOUT A HEARING BEING HELD." That statement in turn was followed by the following statement, also in bold type: "A TIMELY FILED RESPONSE IS NECESSARY FOR A HEARING TO BE HELD." The pleading was filed October 7, 2010. The certificate of service reflects service that day. In addition to service on EMC at the address listed in the proof of claim, the pleading was also mailed to EMC at an address in Irving, Texas and to the post office box of Brice, Vander Linden, EMC's law firm of record in the case. That firm regularly appears in consumer bankruptcy cases throughout Texas. The order was not signed until November 3, 2010, a date 27 days after the pleading was filed and served. No response was ever filed.

explaining why the claimant failed to present that defense in a timely fashion in the first place, falls short of establishing "cause." *See Gonzalez*, 2008 Bankr. LEXIS 1421, at *4-5.[8]

The preliminary question raised by the cause standard in section 502(j) runs parallel to the requirements of Rule 60(b). *Wyatt, supra*; *Gonzalez, supra*; *see also Matter of Colley, supra*. It was thus incumbent on Marix to satisfy the requirements of Rule 60(b) in order to be entitled to reconsideration of the order disallowing EMC's claim. If Marix cannot establish cause for EMC's failure to timely present its defenses to the trustee's objection to its claim, then there is no basis for proceeding further, and the order should stand.

Marix' pleading suggested that there was "excusable neglect" for the failure of EMC to respond to the trustee's motion. Rule 60(b)(1) of the Federal Rules of Civil Procedure permits a court to reopen a judgment for "mistake, inadvertence, surprise, or excusable neglect." Thus the question is whether Marix' or EMC's failure to timely respond to the claims objection amounted to either "excusable neglect" or "inadvertence."[9] The "inadvertence" prong of Rule 60(b)(1) permits a court to grant relief from a judgment "if a party or attorney has failed to complete some required action despite exercising due diligence. Conversely, a court will deny relief on a determination that the facts and circumstances demonstrate a lack of diligence in pursuing or defending litigation." 3-26 Moore's Manual--Federal Practice and Procedure § 26.41. The parties have focused on the "excusable neglect" prong of Rule 60(b)(1) in their pleadings. The Supreme Court has equated "neglect" with negligence. *See Pioneer Inv. Servs. v. Brunswick Assoc.*, 507 U.S. 380, 394-95 (1993) (internal citations omitted). In evaluating whether a party's neglect is excusable, courts engage in a fact-specific inquiry. As stated by the Supreme Court,

> [b]ecause Congress has provided no other guideposts for determining what sorts of neglect will be considered 'excusable,' we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding

---

[8] It is worth noting that here, as in *Gonzalez*, there are equitable reasons *not* to permit an untimely defense to the trustee's claims objection. Here, as in that case, there appears to have been a failure on the part of creditor's counsel to properly monitor this case to defend the claim. Here too, as in *Gonzalez*, substantial additional fees have now been incurred by the lender in attempting to clean up the mess made by prior counsel. And here too, as in *Gonzalez*, it is likely that those fees would then be added to the claim of EMC, to the detriment of other creditors in this case. Said this court in *Gonzalez*,

> Equity has no business interceding to spare counsel from its carelessness -- especially when the cost is to be transferred from the lawyer's client to the debtor borrower in this bankruptcy case. The truly equitable remedy, it would seem, lies not with forcing the debtor to pay the bank's fees, but with the bank insisting on a refund of fees paid to the law firm. That way, the party that caused the problem -- the law firm -- also bears the economic consequences.

*Gonzalez, supra*, at *6.

[9] "Excusable neglect" and "inadvertence" are the most applicable Rule 60(b)(1) grounds for relief based on Marix' pleadings. The "mistake" alternative applies to litigation mistakes or legal mistakes in the judgment. *See* 3-26 Moore's Manual--Federal Practice and Procedure § 26.41 ("As a general proposition, the 'mistake' provision in Rule 60(b)(1) provides for reconsideration of judgments only when (1) a party has made an excusable litigation mistake or an attorney in the litigation has acted without authority from a party, or (2) the court has made a substantive mistake of law or fact in the final judgment or order.").

the party's omission. These include … the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id*. This court elaborated on the *Pioneer* excusable neglect standard in 2007:

The 'excusable neglect' standard implies that there are instances of neglect that are, in fact, inexcusable. In all such circumstances, there is neglect. Thus merely pleading neglect is not enough to warrant relief under Rule 60(b)(1). What must be presented in the motion are the circumstances that render the neglect in question excusable, notwithstanding that it was neglectful. *See In re Colley,* 814 F. 2d 1008, 1010 (5th Cir. 1987) (grounds for relief under rule 60(b) must be stated in the motion to entitle party to relief). Although the Supreme Court might be thought to have paved an easy highway for negligent lawyers in *Pioneer Investment* more than a decade ago, subsequent case law (much of it at the circuit level) has clarified that the Supreme Court's decision should not be read as a federal license to commit malpractice, or to violate the ethical duties a lawyer is obligated to perform under local bar rules. *See Pioneer Investment Services Co. v. Brunswick Assoc. L.P.,* 507 U.S. 380, 13 S. Ct. 1489, 123 L. Ed. 2d 74 (1993) (the determination of what sort of neglect is 'excusable' is, 'at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission'); *In re Pettle,* 410 F.3d 189, 192 (5th Cir. 2005)("While Pioneer guides an analysis of 'excusable neglect' within the context of Bankruptcy Rule 9006(b) (1), nothing in the Supreme Court's opinion changes the well-established rule that 'inadvertent mistake, gross carelessness, ignorance of the rules, or ignorance of the law are insufficient bases for 60(b)(1) relief. In fact, a court would abuse its discretion if it were to reopen a case under Rule 60(b)(1) when the reason asserted as justifying relief is one attributable solely to counsel's carelessness with or misapprehension of the law or the applicable rules of court."), *citing Edward H. Bohlin Co. v. Banning,* 6 F.3d 350, 356-57 (5th Cir. 1993); *see also In re Kmart Corp.,* 381 F.3d 709, 713 (7th Cir. 2004) (proof of claim filed one day late not allowed on excusable neglect grounds where attorney waited until the last minute to file the claim, and left the filing to a clerk, adding that fault in the delay is the preeminent factor in *Pioneer); United States v. Torres,* 372 F.3d 1159, 1163 (10th Cir. 2004) (fault in the delay remains the most important single factor in determining whether neglect is excusable): *Graphic Communications Int'l Union v. Quebecor Printing Providence, Inc.,* 270 F.3d 1, 5 (1st Cir. 2001) (the excuse given for the late filing must have the greatest import); *Lowry v. McDonnell Douglas Corp.,* 211 F.3d 457, 463 (8th Cir. 2000) (at the end of the day, the focus must be upon the nature of the neglect, and 'garden variety attorney inattention' is not excusable neglect).

*In re C. Lynch Builders, Inc.,* 2007 Bankr. LEXIS 2794, at \*14-16 (Bankr. W.D. Tex. 2007).

Here, the Marix employee who testified at the hearing failed to address why Marix was unable to timely respond to the chapter 7 trustee's claim objection. She confirmed that Marix took over servicing responsibilities in late August 2010. She also explained that it takes Marix approximately two weeks to "upload" its client's documents into its own system when it takes over new servicing responsibilities. The claim objection here was filed in early October 2010. The witness gave no testimony as to when this particular loan was loaded into Marix' system; nor did the witness explain why Marix failed to file pleadings in this bankruptcy case indicating that, as the new servicer, they should receive all future pleadings in the case, as would be standard practice for any serviced when the loan in question is involved in a bankruptcy. Marix' employee testified that Marix did not even become aware of the Wilkinsons' bankruptcy until January, 2011. And, in fact, Marix had foreclosed on the property in December, 2010. Marix subsequently had to rescind the foreclosure sale upon discovering the Wilkinsons' bankruptcy. As servicing loans to consumers is apparently the business of Marix, they presumably have a fair percentage of their portfolio at any given time tied up in bankruptcy cases. Again, presumably, they have the requisite skills to navigate the bankruptcy system in order to service a claim tied up in a bankruptcy case. Yet no testimony was offered to explain the failure to take steps in this case to protect EMC's interests, to explain why Marix never even bothered to check whether the loan was involved in a bankruptcy. Needless to say no explanation was given for why any such failures constituted excusable under the standards of Rule 60(b)(1). "The burden of establishing at least one of the Rule 60(b) requirements is on the movant, and a determination of whether that burden has been met rests within the discretion of the court." *Harris v. Thaler*, 2010 U.S. Dist. LEXIS 115295, at \*3 (N.D. Tex. 2010). Here, Marix has not met its burden with respect to Rule 60(b)(1). In fact, it appears not to even have tried.

At the hearing Marix also argued that it is entitled to reconsideration by virtue of Rule 60(b)(4), which permits a court to set aside a judgment if the judgment is "void." Marix says that the order disallowing EMC's claim is void because the chapter 7 trustee failed to specifically address its objection to EMC's claim to the attention of an officer or a managing or general agent of EMC as required by Bankruptcy Rule 7004(b)(3). Marix maintains that that rule, which governs service of process on corporations in contested matters, applies to claims objections, which are "contested matters" under Rule 9014. Because service was defective, says Marix, the subsequent order disallowing EMC's claim must be held to be void under Rule 60(b)(4). That, in turn, says Marix, is sufficient grounds to reconsider the disallowance of the EMC claim under section 502(j).

The trustee in this case served his objection on EMC's attorneys, as listed in EMC's proof of claim, and on EMC itself, at the address that EMC's agents listed on the Proof of Claim form in the box marked "name and address where notices should be sent." Nonetheless, says Marix, that service did not satisfy the requirements of Rule 7004(b)(3), meaning that the service was defective, and therefore void under the standards of Rule 60(b).

11

it is certainly true that, as a general matter, orders entered in violation of a person's due process rights are void and must be set aside under Rule 60(b)(4). *See Callon Petroleum Co. v. Frontier Ins. Co.*, 351 F.3d 204, 208 (5th Cir. 2003) ("We have recognized two circumstances in which a judgment may be set aside under Rule 60(b)(4): 1) if the initial court lacked subject matter or personal jurisdiction; and 2) if the district court acted in a manner inconsistent with due process of law.") (citing *Carter v. Fenner*, 136 F.3d 1000, 1006 (5th Cir. 1998)); *Witherspoon v. Delta Air Lines, Inc.*, 2008 U.S. Dist. LEXIS 61684, at *9-10 (W.D. Tex. Aug. 11, 2008) ("For a judgment to be void under Rule 60(b)(4), it must be determined that the rendering court was powerless to enter it. If found at all, voidness usually arises for lack of subject matter jurisdiction or jurisdiction over the parties. It may also arise if the court's action involves a plain usurpation of power or if the court has acted in a manner inconsistent with due process of law"). The district court for the Western District of Texas has noted that, "[i]n the interest of finality, the concept of setting aside a judgment on voidness grounds is narrowly restricted" *Id.*

Rule 60(b)(4) is designed to permit courts to set aside orders "where an error of constitutional dimension occurs." It is the constitutional dimensions of due process violations that form the basis for the rule's authorization. *See Bardney v. United States*, 1998 U.S. App. LEXIS 13036, at *11 (7th Cir. June 16, 1998) (unpublished opinion) (citation omitted). When such a violation is found, the court has no discretion under Rule 60(b)(4) and must set aside judgment as void. *Carter v. Fenner*, 136 F.3d 1000, 1005 (5th Cir. 1998); *In re Davis*, 150 B.R. 633, 638 (Bankr. W.D. Pa. 1993).

Marix has taken the foregoing general proposition one step further, however, contending that the failure to comply with the technical statutory requirements of Rule 7004(b)(3) also warrants relief under Rule 60(b)(4), regardless whether constitutional due process has been in fact satisfied. In this, Marix has some support. *See, e.g., Jobin v. Otis (In re M&L Business Mach. Co.)*, 190 B.R. 111, 115-116 (D. Colo. 1995) ("An essential requirement of due process is 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the action and afford them an opportunity to present their objections.' In light of the comparatively lenient procedure in bankruptcy, persons effecting service must provide correct notice in accord with the Rules. Thus, strict compliance with Rule 7004 serves to protect due process rights as well as to assure bankruptcy matters proceed expeditiously."); *Addison v. Gibson Equip. Co. (In re Pittman Mechanical Contractors)*, 180 B.R. 453, 457 (Bankr. E.D. Va. 1995) ("In light of the comparatively lenient procedure in bankruptcy, it is of great importance that persons effecting service provide correct notice in accord with the Rules. Rule 7004(b)(3) serves to assure that a corporate defendant is put on actual notice of a lawsuit filed against it. Strict compliance with this notice provision in turn serves to protect due process rights as well as assure that bankruptcy matters proceed expeditiously. Here, [the defendant] did not receive the summons and complaint and the Trustee failed to direct the summons and complaint to a named individual within a corporation as required under 7004(b)(3). Accordingly, [the defendant's] right to due process was improperly denied.") (internal citations omitted); *Saucier v. Capitol One (In re Saucier)*, 366 B.R. 780, 785 (Bankr. N.D. Ohio 2007) ("It is well-established that, given its

due process underpinnings, a party's failure to substantially comply with the notice requirement of Bankruptcy Rule 7004(b)(3) renders the entry of a judgment by default improper.").

The logic expressed by the foregoing authorities is weak, however, given that the Supreme Court of the United States has never equated service of process as prescribed by Rule 4 of the Federal Rules of Civil Procedure with constitutional due process. Granted, failure to assure service in accordance with the rules is some evidence that notice was not effectuated. It is not decisive evidence, however. Indeed, if a party *was* afforded *actual* notice consistent with constitutional standards, then that party cannot claim a violation of its *constitutional* rights to due process of law simply because the technical requirements for service of process might not have been met.

This, in fact, is the approach of a number of courts with regard to service under Rule 7004(b)(3). These courts reject the conclusion that notice in compliance with Rule 7004(b)(3) is *constitutionally* mandated. Instead, they engage in a two-step analysis, examining first whether the party has complied with the technical requirements of Rule 7004(b)(3), then examining whether the mandates of due process have also been satisfied. *See Beneficial Cal., Inc. v. Villar (In re Villar)*, 317 B.R. 88, 93-95 (B.A.P. 9th Cir. 2004) (finding service had been defective under Rule 7004(b)(3) and that such defective service had also violated the party's due process rights because it had "deprived [the party] of actual notice"); *Countrywide Home Loans, Inc. v. Terlecky (In re Fusco)*, 2008 Bankr. LEXIS 2362, at *12-18 (B.A.P. 6th Cir. Sept. 19, 2008) (finding creditor had received more than adequate notice for purposes of due process under Rule 60(b)(4) despite technical non-compliance with Rule 7004(b)(3)); *see also Green Tree Fin. Servicing Corp., Consumer Fin. Div. v. Karbel (In re Karbel)*, 220 B.R. 108, 113 (B.A.P. 10th Cir. 1998) (finding party had complied with the requirements of Rule 7004(b)(3) as well as the requirements of due process).

A bankruptcy court in the Central District of California explained that, under Bankruptcy Rule 9024, "[a]n order is void if it is issued by a court in a manner inconsistent with the due process clause of the Fifth Amendment," but that "[a] violation of a statutory notice requirement, however, is not necessarily a violation of due process, and an order issued in connection with such notice is not necessarily void. To warrant relief pursuant to Rule 60(b)(4), therefore, the moving party must not only identify a technical inadequacy in the notice provided, but must also establish the denial of right to due process." *In re Manchester Center*, 123 B.R. 378, 381 (Bankr. C.D. Cal. 1991) (citing *In re Center Wholesale, Inc.,* 759 F.2d 1440, 1448 (9th Cir. 1985)); *In re Commer. Millwright Serv. Corp.*, 1995 Bankr. LEXIS 2180, at *3 (Bankr. N.D. Iowa Sept. 15, 1995) ("According to the Bankruptcy Rules and applicable Federal Rules of Civil Procedure, an order of a bankruptcy court is void if it is issued in a manner inconsistent with the due process clause of the 5th Amendment. In order to warrant relief from such an order, the moving party must both identify the technical inadequacies and establish a denial of its right to due process. Due process requires that interested parties have meaningful notice with adequate opportunity to object.") (internal citations omitted). The court concurs in the reasoning of the court in *Manchester Center* as the reading more consonant with the Supreme Court's own statement

13

regarding the due process requirements of the Constitution with regard to adequacy of notice. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Accordingly, if the facts of this case confirm that EMC was afforded constitutional due process consistent with *Mullane*, then there is no basis for setting aside the order under Rule 60(b)(4).

The court's conclusions in this regard find further support in the jurisprudence construing the "parent rule" of Rule 7004(b)(3), Rule 4 of the Federal Rules of Civil Procedure. That rule sets out the requirements for the issuance of summons to commence civil litigation. A party may seek the dismissal of a civil complaint on grounds of insufficient process or insufficient service of process, pursuant to Rule 12(b). *See* Fed. R. Civ. P. 12(b). A *failure* to challenge service of process, however, results in a *waiver* of that defense. *See Trust Co. v. N.N.P. Inc.*, 104 F.3d 1478, 1487 (5th Cir. 1997) (because party never objected to the sufficiency of service of process until his motion for rehearing, the court concluded that he had "waived any objection to the sufficiency of service of process of the amended complaints"); *Kellogg Brown & Root Servs. v. Altanmia Commer. Mktg. Co. W.L.L.*, 2007 U.S. Dist. LEXIS 86285 (S.D. Tex. Nov. 21, 2007) ("If the party fails to object to service of process in either a Rule 12(b) motion or its first responsive pleading, '[t]he penalty for failing to raise any of these defenses at this point is waiver.'") (quoting *Golden v. Cox Furniture Mfg. Co., Inc.,* 683 F.2d 115 (5th Cir. 1982)). If a technical defect in service of process can be waived, then the same defect cannot also be grounds for finding a judgment void for lack of due process under Rule 60(b)(4). In other words, a technical defect in service of process is *not* the equivalent of a lack of *due process*, as Marix maintains. *See A.L.T. Corp. v. Small Business Admin.*, 801 F.2d 1451, 1458-1459 (5th Cir. Tex. 1986) ("Rule 4 does not purport to constitutionalize the minimum requirement for valid service of process. Procedural defects constitute a violation of due process only where they 'are of sufficient magnitude . . . where the defects are 'so unfair as to deprive the . . . proceedings of vitality.'") (citations omitted).

Pursuant to the foregoing authorities, the court's first task is determine whether the trustee failed to comply with the requirements of Rule 7004(b)(3) (and whether the trustee was even

14

required to so comply). If such non-compliance is found, the court will then examine whether that non-compliance violated EMC's constitutional due process rights.[10]

The linchpin of Marix' argument is that the service requirements of Rule 7004(b)(3) must be satisfied. The contention is premised on Marix' reading of Rule 9014, which states that "in a contested matter in a case under the Code not otherwise governed by these rules, relief shall be requested by motion …" Rule 9014(a). The rule further states that "the motion shall be service in the manner provided for service of a summons and complaint by Rule 7004." Rule 9014(b). However, a key requirement of the imposition of the service requirements of Rule 7004 is that the contested matter be one "not otherwise governed by these rules …" Rule 9014(a). One court has held that claim objections are a type of contested matter "otherwise governed by these rules" -- in this case by Rule 3007.[11] Thus, the service requirements imposed by Rule 9014(b) do not apply to claims objections. Explained the court:

> … the better analysis [with respect to service of objections to claims] leads to the conclusion that mailing as required by Rule 3007 constitutes sufficient and proper service, and that service under Rule 7004 is not required. Rule 9014(a) states that 'in a contested matter in a case under the Code *not otherwise governed by these rules*, relief shall be requested by motion, . . .' (Emphasis added.) Subsection (b) goes on to state that such 'motion shall be served in the manner provided for service of a summons and complaint by Rule 7004.' An objection to a claim is a contested matter not commenced by a motion and that is otherwise governed by Rule 3007; therefore, Rule 7004 does not govern. Further, since Rule 3007 is the

---

[10] Here, there is no issue as to a failure of constitutional due process. As previously explained by this court in its order granting EMC's motion to reconsider the court's approval of the Trustee's final report, EMC's claim

> indicated that Hilary B. Bonial and Joe M. Lozano, Jr. had signed the proof of claim as the creditor's authorized agents, though their addresses were not indicated on the face of the claim. In the block on the claim entitled 'Name and address where notices should be sent' the only address furnished was EMC's P.O. Box address in Lewisville, Texas. Thus, when the trustee filed his objection, he followed the normal procedure that trustees follow when objecting to claims – he adhered to the statement in the proof of claim itself regarding where and to whom notices should be sent. The order approving the chapter 7 trustee's objection to claim was itself served on all creditors and parties in interest via the Bankruptcy Noticing Center, as well as the court's own electronic noticing, given to all attorneys of record who are electronic case filers. That of necessity included Hilary Bonial and Joe Lozano, Jr., both listed attorneys for EMC Mortgage at that point in time. Marix is not listed as the holder of the claim, but Marix did not file a notice of transfer or otherwise give any indication that they were the proper parties to be served with respect to EMC's claim in this bankruptcy case. Marix' counsel did not file a notice of appearance. The trustee had no way of knowing at that point in time of the existence of Marix.

Order on Motion to Reconsider Approval of the Trustee's Final Report and Accounting, (Doc. # 383). There was thus more than sufficient notice to satisfy constitutional due process.

[11] Rule 3007 provides that "[a] copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant, the debtor or debtor in possession, and the trustee at least 30 days prior to the hearing." Fed. R. Bankr. P. 3007.

specific rule concerning objections to claims, it controls service of such an objection rather than the more general Rule 9014(b). *State Line Hotel*, 323 B.R. [703, 712 (B.A.P. 9th Cir. 2005)]; *In re Hejl*, 85 B.R. 399, 400 (Bankr. W.D. Tex. 1988). Therefore, under Rule 3007, once a creditor has submitted itself to the court's jurisdiction by way of filing a proof of claim, 'due process is satisfied by mailing the objection and notice to the name and address specified on the poof of claim for the receipt of notices in the case.' *In re Hawthorne*, 326 B.R. 1, 5 (Bankr. D. Colo. 2005).

*In re Anderson*, 330 B.R. 180, 186 (Bankr. S.D. Tex. 2005). Courts in other districts have also concluded that Rule 3007, rather than Rule 7004, governs service of objections to claims, including one court from this district. *See, e.g.*, *In re Hejl*, 85 B.R. 399, 400 (Bankr. W.D. Tex. 1988); *In re Hensley*, 356 B.R. 68, 77-79 (Bankr. D. Kan. 2006); *In re Parker*, 392 B.R. 490, 495-96 (Bankr. D. Utah 2008); *In re Arnott*, 388 B.R. 656, 660 (Bankr. W.D. PA. 2008) (vacated on other grounds).

There are courts that have concluded that Rule 7004 *does* apply to claims objections, a number of which have been noted earlier in this opinion. *See In re Cagle*, 2008 Bankr. LEXIS 2094, at *9-13 (Bankr. N.D. Ga. June 2, 2008); *see also In re Sunde*, 2007 Bankr. LEXIS 3704 (Bankr. W.D. Wisc. Oct. 2, 2007). These cases reach their conclusion premised upon their assumption that the filing of a claim objection initiates a contested matter, and as such, Rule 9014 requires service in accordance with Rule 7004, which in turn requires that service be made to the attention of a corporate officer. The court in *Sunde* rejected the debtor's argument that mailing the claim objection to the creditor as listed on the proof of claim (in compliance with Rule 3007) was sufficient, by distinguishing between 'notice' and 'service.' said the court, service still had to be perfected under Rule 7004 even if notice had complied with Rule 3007 because compliance with Rule 7004(b)(3) was necessary for the court to acquire personal jurisdiction over the creditor. *Id. see also United States ex rel. IRS v. Filipovits*, 1996 U.S. Dist. LEXIS 13195, at *5-6 (D. Md. 1996) ("Bankruptcy Rule 3007 governs objections to claims. It states in pertinent part that '[a] copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant…' Because objections are considered 'contested matters' for the purposes of the Bankruptcy Code, Rule 3007 must be read in conjunction with Bankruptcy Rule 9014 which provides that 'the motion shall be served in the manner provided for service of a summons and complaint by Rule 7004.'); *United States v. Oxylance Corp.*, 115 B.R. 380 (N.D. Ga. 1990) (same); *United States v. Arthur's Indus. Maintenance (In re Arthur's Indus. Maintenance)*, 1993 U.S. Dist. LEXIS 14542, at *8 (W.D. Va. 1993) (same); *United States v. Gariano*, 1993 U.S. Dist. LEXIS 11515, 9-10 (C.D. Cal. 1993) (same); *In re Boykin*, 246 B.R. 825, 828 (Bankr. E.D. V.A. 2000) ("While Rule 3007 provides that the proper pleading is an objection to a proof of claim, not a motion to disallow a proof of claim, it does not provide for alternative service. Consequently, Rule 7004 is applicable. It sets out the manner in which service of an objection to a proof of claim must be made.").

16

The court in *In re Cagle* rejected the reasoning of *In re Sunde* (and other cases that have reached the same conclusion), stating:

> Courts routinely recognize that the filing of a proof of claim is analogous to the filing of a complaint and that, by doing so, a creditor submits itself to the jurisdiction of the court, at least with regard to the adjudication of its claim. If the creditor has voluntarily submitted itself to the jurisdiction of the court by filing a proof of claim, there is no need to be concerned that the failure to perfect service of process in accordance with Rule 7004(b)(3) has left the court without personal jurisdiction over the creditor for purposes of resolving the creditor's claim. Further, the specific language of Rule 9014 exempts an objection to claim from the requirement of service in accordance with Rule 7004. Rule 9014(a) states that 'in a contested matter in a case under the Code *not otherwise governed by these rules*, relief shall be requested by motion…,'" and Rule 9014(b) provides that a '*motion* shall be served in a manner provided for service of a summons and complaint by Rule 7004. Fed. R. Bankr. P. 9014 (emphasis added). A claim objection is otherwise governed by Rule 3007 and is also not relief requested by motion. Accordingly, by its own terms, Rule 9014 does not apply to claim objections.

2008 Bankr. LEXIS 2094, at *11-12 (citing *In re Hawthorne*, 326 B.R. 1 (Bankr. D. Colo. 2005); *In re Anderson*, 330 B.R. 180 (Bankr S.D. Tex. 2003)).

There is no consensus in the case law regarding whether service of a claim objection must comply with Rule 7004 or whether compliance with Rule 3007 suffices. The court does not dispute that the filing of a claim objection initiates a contested matter. *See Simmons v. Savell (In re Simmons)*, 765 F.2d 547, 552 (5th Cir. 1985); Fed. R. Bankr. P. 3007, Advisory Committee Note (1983). While the Fifth Circuit in *Simmons* seems to have assumed that Rule 9014 (and thus Rule 7004) applies to claim objections, the decision does not actually address the issue directly. *See Simmons*, 765 F.2d at 552. This court is inclined to agree with those cases that have found that service of a claim objection is "*otherwise governed by these rules*"—in other words, because service is governed by Rule 3007, Rule 9014 (and thus Rule 7004) does not apply. Those cases that have concluded that Rule 3007 must be read in conjunction with Rule 7004 simply because claim objections are contested matters do not address the "otherwise governed" language in Rule 9014. The reasoning in both *Anderson* and *Cagle* is sound and is adopted as the rule of decision by this court.

Even if the court were to conclude that Rule 7004(b)(3) applies to the trustee's claim objection, the trustee's service of its objection upon EMC generally, as well as upon EMC's attorneys (whom EMC had designated to receive service on its proof of claim) satisfied the requirements of that rule. Rule 7004(b)(3) provides that service may be made in the following manner: "[u]pon a domestic or foreign corporation … by mailing a copy of the summons and

complaint to the attention of an officer, a managing or general agent, *or to any other agent authorized by appointment* or by law to receive service of process …" Fed. R. Bankr. P. 7004(b)(3) (emphasis added). In *In re Chess*, the bankruptcy court for the Western District of Tennessee held that, based on the facts of that case, an address designated by a creditor satisfied the "appointment" requirement of Rule 7004(b)(3). 268 B.R. 150, 157-58 (Bankr. W.D. Tenn. 2001). The court noted that the creditor had "appointed its bankruptcy department as the proper agent and the designated Pennsylvania address as the proper address for service of process in its July 7, 2000 letter to the Chapter 13 Trustee. Accordingly, service of process upon [the creditor] met both the requirements of due process and Fed. R. Bankr. P. 7004." *Id*. at 158. Other courts have similarly concluded that the agent and address designated by a creditor on its proof of claim evidences "appointment," thus satisfying the service requirements of Rule 7004(b)(3). *See, e.g.*, *Deutsche Bank Nat'l Trust Co. v. Rogan (In re Allen)*, 417 B.R. 850, 853 (E.D. Ky. 2009) ("Appellant Deutsche listed Litton's Bankruptcy Department as its agent on the proof of claim for all notices regarding the bankruptcy case, which serves as an 'appointment' under the Rule [7004(b)(3)]."); *In re Ms. Interpret*, 222 B.R. 409, 413 (Bankr. S.D.N.Y. 1998) (mailing to address and agent listed on proof of claim satisfied Rule 7004(b)(3)); *In re Rushton*, 285 B.R. 76, 81 (Bankr. S.D. Ga. 2002) (following *Ms. Interpret*); *Green Tree Fin. Servicing Corp. v. Karbel (In re Karbel)*, 220 B.R. 108, 112 (B.A.P. 10th Cir. 1998) (notice sent to address designated by creditor as proper address to send notice to satisfied requirements of Rule 7004(b)(3)); *In re Village Craftsman*, 160 B.R. 740, 745 (Bankr. D.N.J. 1993) (same); *Cruisephone, Inc. v. Cruise Ships Catering and Servs. N.V. (In re Cruisephone, Inc.)*, 278 B.R. 325, 332-333 (Bankr. E.D.N.Y. 2002) (noting that "[t]here is ample authority for the proposition that service of process to the address designated in a proof of claim constitutes proper service under Bankruptcy Rule 7004(b)(3)"). In short, because the trustee satisfied the requirements of Rule 7004(b)(3), EMC suffered no violation of its due process rights. EMC has thus failed to establish cause for reconsideration of the order disallowing its claim under either section 502(j) or Rule 60(b)(4) of the Federal Rules of Civil Procedure.

The equities do not lie with EMC in any event, even if this were a case that ought to turn only on its equities. At every turn, EMC has failed to protect its own rights in this case, and at every turn, it has dashed in the door at the last minute, its figurative hair on fire, demanding that this court rescue it from its own dilatoriness. And Marix is no better, having actually foreclosed on the property without even attempting to check whether a bankruptcy might be going on. In doing so, EMC has imposed great additional expense on this estate and its creditors. At every turn, EMC has seemed to claim that it somehow was left out when it came to noticing, even though the Bankruptcy Noticing Center has given notice at the addresses that EMC itself has furnished to the court, the creditors, and the trustee. It has been unable, even at a hearing at which one would have expected all the evidence to have been ready and available for the court, to produce a true copy of the note that purportedly forms the basis for its claim, and it has offered no explanation for its apparent attempts to cure the chain of title *ex post*. Neither EMC nor Marix even offered any explanation for their complete lack of attention to this case. EMC has not behaved equitably. It deserves no equity.

**Conclusion**

For the reasons stated herein, the court concludes that the Trustee complied with the requirements of Bankruptcy Rule 7004(b)(3) by mailing its objection to EMC's claim to EMC generally as well as the attorneys EMC designated on its proof of claim to receive such service. EMC is not entitled to reconsideration of this court's order disallowing EMC's claim on the ground that EMC did not receive proper notice of the trustee's objection.

#  #  #